# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MARK A. HASSETT, )<br>)<br>Plaintiff, )<br>v. )<br>)<br>CAROLYN W. COLVIN, )<br>**Acting Commissioner of the Social** )<br>**Security Administration,**[1] )<br>)<br>Defendant. ) | Case No. CIV-12-37-SPS |

## OPINION AND ORDER

The claimant Mark A. Hassett requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his applications for benefits under the Social Security Act. The claimant appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining that he was not disabled. As discussed below, the Commissioner's decision is REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such

---

[1] On February 14, 2013, Carolyn Colvin became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Colvin is substituted for Michael J. Astrue as the Defendant in this action.

severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence has been interpreted by the United States Supreme Court to require "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v.*

---

[2] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if his impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), he is deemed disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that he lacks the residual functional capacity (RFC) to return to his past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account his age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*NLRB*, 305 U.S. 197, 229 (1938). The Court may not reweigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was born on January 2, 1967, and was forty-four years old at the time of the administrative hearing (Tr. 21, 109). He has past work as a mechanic, maintenance mechanic, welder, and construction worker (Tr. 16, 33). The claimant alleges that he has been unable to work since October 31, 2009 because of past back and neck surgeries and a stomach catheter (Tr. 151).

**Procedural History**

The claimant applied for supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on December 17, 2009 (Tr. 11). The Commissioner denied his application. ALJ Kim D. Parrish conducted an administrative hearing and found that the claimant was not disabled in a written opinion dated May 16, 2011 (Tr. 11-18). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b), but could stoop, kneel, and crouch only occasionally (Tr. 14). The ALJ concluded that although the claimant could not return to any past relevant work, he was nevertheless not disabled because there was other work he could perform, *i. e.*, parking lot cashier, laundry folder, and small parts assembler (Tr. 17-18).

## Review

The claimant contends that the ALJ erred: (i) by failing to properly analyze the opinion of his treating physician, Dr. J.T. O'Connor, D.O.; and (ii) by failing to properly analyze his credibility. Because the ALJ did fail to properly analyze Dr. O'Connor's opinion, the decision of the Commissioner should be reversed and the case remanded for further analysis.

The record reveals that the claimant began receiving treatment from Dr. J.T. O'Connor in August 2009 (Tr. 209). During a visit on October 12, 2009, Dr. O'Connor noted that the claimant experiences some joint pain with weather changes and that the claimant's back pain had returned one month prior because a horse had fallen on him (Tr. 208). One month later, the claimant presented to the emergency room at Mercy Memorial Health Center because his suprapubic catheter was not functioning, causing severe pain (Tr. 226). The catheter was replaced, and the claimant was discharged in

stable condition (Tr. 227). In March 2010, the claimant reported back pain, difficulty walking, joint pain, stiffness and swelling (Tr. 292). Dr. O'Connor's assessment was arthritis/arthropathy, osteoarthritis, and back pain (Tr. 292). During subsequent visits, the claimant persisted with the same complaints (Tr. 328, 332).

Dr. O'Connor completed a Medical Source Statement – Physical on August 17, 2010 in which he opined that the claimant could frequently lift and carry up to 10 pounds, occasionally lift and carry up to 20 pounds, stand and/or walk for less than six hours in an eight-hour workday, and sit for less than two hours in an eight-hour workday (Tr. 318). Dr. O'Connor further opined that the claimant could frequently balance, occasionally stoop, kneel, crouch, crawl, reach, handle, finger, and feel, and never climb (Tr. 319). Dr. O'Connor wrote that his conclusions were based on the patient's "report of limitations" (Tr. 319).

Dr. O'Connor completed a second Medical Source Statement – Physical on March 11, 2011 in which he opined that the claimant could frequently lift and carry up to ten pounds, occasionally lift and carry up to ten pounds, stand and/or walk for less than two hours in an eight-hour workday, and sit for less than two hours in an eight-hour workday (Tr. 338). Dr. O'Connor wrote that the claimant was limited in his ability to push and/or pull and could not work at heights (Tr. 339). Finally, Dr. O'Connor found that the claimant could frequently reach, handle, finger, and feel, occasionally climb, balance, kneel and crouch, and never stoop or crawl (Tr. 339). As the basis for his opinions, Dr. O'Connor wrote that the claimant's pain was an eight out of ten at its worst and a four out

of ten at its least, but that the claimant's x-rays and surgical reports were not in his possession (Tr. 339).

The claimant presented to state agency physician Dr. William Cooper, D.O., for a physical examination on March 6, 2010 (Tr. 279-85). Dr. Cooper noted that the claimant reported a history of chronic neck and low back pain, having undergone a discectomy in 1994 and a fusion in 1995 (Tr. 279). It was also noted that the claimant's pelvis was crushed in July 2008 because a horse had fallen on him, resulting in an inability to urinate and the need for a suprapubic catheter (Tr. 279). Upon examination, Dr. Cooper wrote that the claimant had tenderness on palpation and limited range of motion associated with pain in both the cervical and lumbar-sacral spine (Tr. 296). The claimant had a bilaterally strong and firm grip strength and was able to perform both gross and fine manipulation (Tr. 281). Further, the claimant had a safe and stable gait with normal heel and toe walking (Tr. 281). Dr. Cooper's assessment was that the claimant had failed back syndrome, chronic neck pain, chronic low back pain, status post cervical fusion, and suprapubic catheter secondary to urethral scarring (Tr. 281).

State agency physician Dr. Luther Woodcock, M.D. reviewed the claimant's medical records and completed a Physical Residual Functional Capacity Assessment on June 3, 2010. He opined that the claimant was capable of occasionally lifting and/or carrying up to 20 pounds, frequently lifting and/or carrying up to 10 pounds, standing and/or walking about six hours in an eight-hour workday, and sitting for about six hours in an eight-hour workday (Tr. 37). Dr. Woodcock also found that the claimant could only

-6-

occasionally climb ramps, stairs, ladders, ropes, and scaffolds and kneel but could frequently balance, kneel, crouch, and crawl (Tr. 38).

The claimant testified that he had neck surgery in January 2009, but still had pain radiating into his shoulders and causing his hands to go numb (Tr. 24). He added that he had muscle spasms in his back every day, and took muscle relaxers for relief (Tr. 26). The claimant testified that he had surgeries on his lower back in 1994 and 1995, but the pain worsened when he was hit with a forklift in 2007 (Tr. 26). He also testified that his lower back pain radiated into his right leg down to his foot, for which he took Lortab (Tr. 28). The claimant claimed he could sit for 45 minutes at a time, stand for one hour at a time, walk a quarter of a mile, and lift 20 pounds (Tr. 29). He testified that his back and neck pain interrupted his sleep, and that he spent seven to eight hours a day lying down or reclining (Tr. 32).

The claimant contends, *inter alia*, that the ALJ failed to properly analyze the opinion evidence from his treating physician Dr. O'Connor. Medical opinions from a treating physician are entitled to controlling weight if they were "well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). If a treating physician's opinions are not entitled to controlling weight, the ALJ must determine the proper weight to give them by analyzing the factors set forth in 20 C.F.R. § 416.927. *Id.* at 1119 ("Even if a treating physician's opinion is not entitled to controlling

weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in § [416.927].'"), *quoting Watkins*, 350 F.3d at 1300. The factors to consider are: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins,* 350 F.3d at 1300-01, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001) [quotation omitted]. Finally, if the ALJ decides to reject a treating physician's opinions entirely, "he must . . . give specific, legitimate reasons for doing so[,]" *id*. at 1301 [quotation marks omitted; citation omitted], so it is "clear to any subsequent reviewers the weight [he] gave to the treating source's medical opinion and the reasons for that weight." *Id*. at 1300 [quotation omitted].

The ALJ gave "some probative weight," *i. e.*, less than controlling weight, to the August 17, 2010 opinion of Dr. O'Connor because he found it to be inconsistent with his treatment notes and based purely upon the claimant's subjective complaints (Tr. 15-16).[3]

---

[3] The ALJ assigned no weight to the second opinion, dated March 11, 2011, offered by Dr. O'Connor, because it was undated and unsigned. It appears from the record that the opinion was actually incomplete as submitted. However, a complete copy of the opinion was submitted to the Appeals Council, who made the opinion part of the record but did not analyze the opinion in

The analysis of this opinion by Dr. O'Connor is flawed for several reasons. First, the ALJ noted that Dr. O'Connor placed restrictions on the claimant's ability to lift, kneel, climb, and bend, but not on his ability to walk, sit or stand (Tr. 16, 328). The ALJ did not, however analyze the restrictions actually imposed by Dr. O'Connor in light of his medical opinions. Second, although the ALJ found that Dr. O'Connor's opinion was inconsistent with his treatment notes, he did not determine whether Dr. O'Connor's opinion was consistent with other evidence of record, *e. g.*, the findings by state agency physician Dr. Cooper, whose examination revealed that the claimant had tenderness on palpation and limited range of motion associated with pain in both the cervical and lumbar-sacral spine (Tr. 296). *See* Soc. Sec. Rul. 96-6p, 1996 WL 374180, at *4 ("[T]he [ALJ] . . . must consider and evaluate any assessment of the individual's RFC by a State agency medical or psychological consultant and by other program physicians and psychologists. . . . RFC assessments by State agency medical or psychological consultants or other program physicians or psychologists are to be considered and addressed in the decision as medical opinions from nonexamining sources about what the individual can still do despite his or her impairment(s)."). Finally, the ALJ appears to have relied on the opinion of state agency physician Dr. Woodcock, which he mentioned generally but otherwise failed to discuss in any detail. *See, e. g., Hamlin v. Barnhart,* 365 F.3d 1208, 1223 (10th Cir. 2004) ("If an ALJ intends to rely on a nontreating physician

---

accordance with the standards set forth in 20 C.F.R. § 416.927. On remand, the ALJ should properly analyze *both* of Dr. O'Connor's opinions.

or examiner's opinion, he must explain the weight he is giving to it."), *citing* 20 C.F.R. § 404.1527(f)(2)(ii); 416.927(f)(2)(ii). *See also Robinson v. Barnhart,* 366 F.3d 1078, 1084 (10th Cir. 2004) ("The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all. Thus, the ALJ erred in rejecting the treating-physician opinion of Dr. Baca in favor of the non-examining, consulting-physician opinion of Dr. Walker absent a legally sufficient explanation for doing so."), *citing* 20 C.F.R. §§ 404.1527(d)(1) & (2), 416.927(d)(1) & (2); Soc. Sec. Rul. 96-6p, 1996 WL 374180, at *2.

Because the ALJ failed to properly analyze Dr. O'Connor's opinion, the decision of the Commissioner must be reversed and the case remanded for proper analysis. If such analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work he can perform, if any, and ultimately whether he is disabled.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and that the decision of the Commissioner decision is therefore not supported by substantial evidence. The decision of the Commissioner decision is accordingly hereby REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 30th day of September, 2013.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma